**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY, <br><br>          Plaintiff, <br><br>     v. <br><br> TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, JAMES RIVER INSURANCE COMPANY, COLONY INSURANCE COMPANY, STATE NATIONAL INSURANCE COMPANY AND UNITED SPECIALTY INSURANCE COMPANY, <br><br>          Defendants. | Civil Action No.: <br><br><br> **COMPLAINT** |

Plaintiff New York Marine and General Insurance Company ("Plaintiff" or "New York Marine"), by way of Complaint against Defendant Travelers Indemnity Company of Connecticut ("Travelers"), James River Insurance Company ("James River"), State National Insurance Company ("State National") and United Specialty Insurance Company ("United Specialty") states as follows:

**<u>JURISDICTION AND VENUE</u>**

1.	This Court has jurisdiction over this matter pursuant to 28 U.S.C §1332(a) by reason of the diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75,000.00 exclusive of costs.

2.	At all times hereinafter mentioned, Plaintiff was, and still is, an insurance company organized under the laws of the State of New York with its principal place of business located in Morris County, New Jersey.

10321340v5

3. At all times hereinafter mentioned, Plaintiff was, and still is, duly authorized to conduct business within the State of New York.

5. At all times hereinafter mentioned, Travelers was, and still is, an insurance company organized under the laws of the State of Connecticut, with its principal place of business located in Hartford, Connecticut.

6. At all times hereinafter mentioned, Travelers was, and still is, duly authorized to conduct business within the State of New York.

7. At all times hereinafter mentioned, James River was, and still is, an insurance company organized under the laws of the State of Ohio, with its principal place of business located in Richmond, Virginia.

8. At all times hereinafter mentioned, James River was, and still is, duly authorized to conduct business within the State of New York.

9. At all times hereinafter mentioned, Colony was, and still is, an insurance company organized under the laws of the Commonwealth of Virginia, with its principal place of business located in Richmond, Virginia.

10. At all times hereinafter mentioned, Colony was, and still is, duly authorized to conduct business within the State of New York.

11. At all times hereinafter mentioned, State National was, and still is, an insurance company organized under the laws of the State of Texas, with its principal place of business located in Bedford, Texas.

12. At all times hereinafter mentioned, State National was, and still is, duly authorized to conduct business within the State of New York.

10321340v5

13. At all times hereinafter mentioned, United Specialty was, and still is, an insurance company organized under the laws of the State of Delaware, with its principal place of business located in Bedford, Texas.

14. At all times hereinafter mentioned, United Specialty was, and still is, duly authorized to conduct business within the state of New York.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claim occurred in this District.

**SUBSTANTIVE ALLEGATIONS**

16. On or about March 29, 2023, Jesus Montiel ("Montiel") commenced a lawsuit against 219 JSP LLC ("219 JSP"), KSK Construction Group, KSK Construction Corp., KSK Construction, Inc., and International Concrete Corp. ("International Concrete") entitled *Jesus Montiel, Plaintiff, against 219 JSP LLC, KSK Construction Group, KSK Construction Corp., KSK Construction, Inc. and International Concrete Corp., Defendants*, in the Supreme Court of New York, County of Queens, Index Number 706655/2023 (the "Underlying Action").

17. On or about July 16, 2025, Montiel filed an Amended Complaint in the Underlying Action.

18. In the Underlying Action, Montiel alleges that on or about March 23, 2023, he was involved in the erection, demolition, repairing, altering, cleaning, or painting of buildings or structures located at 219 Jay Street, Brooklyn, New York (the "Premises").

19. The Underlying action further alleges that on or about March 23, 2023 there was ongoing construction, renovation and demolition at the Premises, that generally involved the erection, demolition, repairing, altering, cleaning, or painting of buildings or structures of certain facilities located at The Premises.

3

20. The Underlying Action further alleges that prior to March 23, 2023, 219 JSP LLC contracted with KSK Construction Group, KSK Construction Corp, KSK Construction, Inc., and International Concrete to perform work at the Premises.

21. It is further alleged in the Underlying Action that prior to March 23, 2023, 219 JSP, KSK Construction Group, KSK Construction Corp., and/or KSK Construction, Inc. hired or retained Best Mechanical Plumbing, LLC ("Best Mechanical"), for the performance of work at the Premises.

22. It is further alleged in the Underlying Action that prior to March 23, 2023, 219 JSP, KSK Construction Group, KSK Construction Corp., and/or KSK Construction, Inc. hired or retained International Concrete for the performance of work at the Premises.

23. Avendano contracted with International Concrete to perform work on the Premises.

24. The Underlying Action additionally alleges that on or about March 23, 2023, while in the in the performance of his construction and renovation work on the Premises, Montiel was caused to suffer serious and permanent injuries as a result of an unsafe work environment at the Premises.

25. Montiel asserts four causes of action in the Underlying Action against 219 JSP, KSK Construction Group, KSK Construction Corp, KSK Construction, Inc., and International Concrete, sounding in common law negligence (Count One), violation of New York Labor Law Section 200 (Count Two), violation of New York Labor Law Section 240 (Count Three), and violation of New York Labor Law Section 241(6) (Count Four).

26. Plaintiff New York Marine issued commercial general liability policy number GL2021000014279 to KSK Construction Group LLC as the named insured, with effective dates

10321340v5

of November 18, 2022 to November 18, 2023, an Each Occurrence limit of $2,000,000.00 and a General Aggregate limit of $4,000,000.00 (the "New York Marine Policy").

27. 219 JSP is an additional insured under the New York Marine Policy.

28. Plaintiff is defending 219 JSP, LLC, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. in the Underlying Action pursuant to the New York Marine Policy.

29. On or about June 27, 2024, 219 JSP and KSK Construction Group, LLC filed a Third-Party Complaint against Best Mechanical and Avendano Development, Inc. ("Avendano") in the Underlying Action for contractual indemnity, common law indemnity, contribution, and failure to provide insurance (the "Underlying Third-Party Action") relating to the claims alleged in the Underlying Action.

30. On or about July 10, 2024, Montiel served his Verified Bill of Particulars in the Underlying Action. Montiel stated that the March 23, 2023 accident occurred at approximately 1:45 PM "on the premises of 219 Jay Street, Brooklyn, New York 11201" in the "area where Plaintiff was performing his functions."

31. Montiel further alleges in his July 10, 2024 Verified Bill of Particulars that the defendants in the Underlying Action were negligent, careless and reckless in failing to construct, equip, arrange, operate and conduct the worksite as to provide reasonable and adequate protection to the lives, health and safety of all persons, Montiel in particular, employed therein or lawfully frequenting such places, resulting in his being seriously injured.

32. Montiel additionally alleges in his July 31, 2024 Verified Bill of Particulars that as a result of the March 23, 2023 accident he sustained serious and permanent injuries, including closed head trauma; traumatic brain injury; concussion; post-concussion syndrome; decreased

range of motion; bilateral hearing loss; right frontal subcutaneous scalp swelling/hematoma/laceration; headaches; eye pain; dental trauma and fractured teeth; multiple herniated and bulging cervical and lumbar discs, necessitating a lumbar fusion and decompressive lumbar laminectomy; posterior bilateral pedicle screw rod implants; autogenous bone graft; radiculopathy; lumbar strain and sprain and an anteroinferior labral tear necessitating arthroscopy.

33. Montiel further alleges in his July 31, 2024 Verified Bill of Particulars that he has incurred special damages in the approximate amount of $2,500,000.00, and that he anticipates future special damages in the approximate amount of $2,500,000.00.

34. Montiel further claims in his July 31, 2024 Verified Bill of Particulars that as a result of his accident he has lost earnings in the amount of approximately $28,000.00, and anticipates future loss of earnings of approximately $1,123,200.00, not including a loss in salary increases, union benefits, fringe benefits and contributions to his social security and 401k.

35. On December 1, 2021, 219 JSP as owner, entered into a contract with KSK Construction Group, LLC as Construction Manager for the work to be performed at 219 Jay Street, Brooklyn, New York (the "Project").

36. Best Mechanical, as Trade Contractor, entered into a Trade Contract Agreement with KSK Construction Group LLC as Construction Manager, dated December 1, 2021, to perform plumbing and sprinkler work at the Premises (the "Best Mechanical Trade Contract Agreement").

37. The Best Mechanical Trade Contract Agreement contains the following Indemnity provision:

> 8. Trade Contractor shall undertake and fulfill all of the requirement towards the Construction Manager that the Construction Manager has undertaken towards the Owner in the Prime Contract

*     *     *

10321340v5

8.1. In addition to assuming any and all obligation undertaken by Trade Contractor pursuant to the Prime Contract, Trade Contractor also agrees as follows:

To the fullest extent permitted by law, the Trade Contractor shall defend, indemnify and hold harmless the Owner, Owner's lenders, the Indemnitees set forth in the Prime Contract, Construction Manager and the officers, directors, managers, agents, employees, members and shareholders of any of them from and against claims, damages, losses and expenses, including but limited to attorney's fees and costs, arising out of or resulting from the breach of this Agreement and/or performance of the Work, including but not limited to, such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death or to injury to or destruction of tangible property (other than the Work itself), including loss of use resulting there from, caused by negligence acts or omissions of the Trade Contractor, the Trade Contractor's sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, except to the extent such claim, damage, loss or expense is caused by the negligence of a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described herein.

*       *       *

8.4. Trade Contractor waives all rights against Construction Manager, Owner, the Indemnities and Architect and their agents, officer, directors and employees for recovery or damages to the extent that these damages are covered by any insurance required by this Agreement.

38. The Best Mechanical Trade Contract Agreement contains the following insurance provision:

9. Insurance:

The Trade Contractor shall procure and shall maintain until final acceptance of the Work or until such time as required by the Owner in the Prime Contract, such insurance as will protect the Trade Contractor, the Construction Manager, the Owner and its lenders, and their respective officers, directors, managers, agents, shareholders, members and employees, insuring against claims,

7

damages and losses arising out of or resulting from the Work, whether performed by the Trade Contractor, or by anyone directly or indirectly employed by the Trade Contractor, or by anyone for whose acts Trade Contractor may be liable."

\* \* \*

9.1 The Trade Contractor shall purchase and maintain insurance of the following types of coverage and limits of liability:

| | |
|---|---|
| Commercial General Liability – including Contractual Liability | $2,000,000 Each Occurrence $2,000,000 Aggregate, PER PROJECT |
| Completed Products-Completed Operations | $2,000,000 Aggregate |
| Workers' Compensation and Employers Liability | $1,000,000 Each Employee |
| Business Automobile, Including HNOA | $1,000,000 CSL per Accident |
| Umbrella Liability | $2,000,000 |

NO EXCLUSIONS FOR CONTRACTUAL, OR WORKER INJURY ARE ACCEPTABLE

**Umbrella Liability Insurance in an amount not less than $2,000,000 providing excess coverage over all limits and coverages required in paragraph above, except for subcontractors in the trades of scaffolding demolition excavation, of which at least $5,000,000 is required.**

The additional insured list should include:

I. KSK Construction Group LLC
II. 219 JSP LLC, Tankhouse LLC, 219JSP Manager LLC, TR Investors LLC
III. Bank Hapoalim B.M. ("BH"), ISAOA/ATIMA
IV. The City of New York, together with its officials and employees, New York City Dept. of Buildings
V. 40 Flatbush Realty Associates LLC

In the event that the Work includes performing remediation work, if required by Owner, Trade Contractor shall purchase and maintain Contractor's Pollution Liability insurance for environmental incidents that arise out of the Work, with limits of no less than Two

8

Million Dollars ($2,000,000) per claim and Two Million Dollars ($2,000,000) in the aggregate, covering both first and third party claims, such policy coverage to include a three (3) year tail.

**The Owner, Indemnitees and/or Construction Manager or any other entity designated by the Owner or Construction Manager (such as the Project lender) are to be named as an additional insured on a primary noncontributory basis to the Trade Contractor's insurance policies.**

\*     \*     \*

9.3 Certificates of Insurance acceptable to the Construction Manager and Owner shall be filed with the Construction Manager prior to commencement of the Trade Contractor's Work. All such certificates of insurance shall, at a minimum, contain a provision that coverage afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Construction Manager. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final application for payment as required. If any information concerning reduction of coverage is not furnished by the insurer, it shall be furnished by the Trade Contractor with reasonable promptness according to the Trade Contractor's information and belief. At any time, Trade Contractor shall furnish to Construction Manager any and all endorsements and policies of insurance demanded by Construction Manager.

39.     The Best Mechanical Trade Contract Agreement obligated Best Mechanical to purchase commercial general liability insurance that names 219 JSP and KSK Construction Group as additional insureds on a primary and non-contributory basis and to obtain and provide certificates of insurance that reflect the coverage and the status of 219 JSP and KSK Construction Group as additional insureds.

40.     International Concrete, as Trade Contractor, entered into a Trade Contract Agreement with KSK Construction Group LLC as Construction Manager, dated December 1,

2021, to perform foundation and superstructure concrete work at the Premises (the "International

Concrete Trade Contract Agreement").

41.     The International Concrete Trade Contract Agreement contains the following

Indemnity provision:

> 8.      Trade Contractor shall undertake and fulfill all of the requirement towards the Construction Manager that the Construction Manager has undertaken towards the Owner in the Prime Contract
>
> *     *     *
>
> 8.1.     In addition to assuming any and all obligation undertaken by Trade Contractor pursuant to the Prime Contract, Trade Contractor also agrees as follows:
>
> To the fullest extent permitted by law, the Trade Contractor shall defend, indemnify and hold harmless the Owner, Owner's lenders, the Indemnitees set forth in the Prime Contract, Construction Manager and the officers, directors, managers, agents, employees, members and shareholders of any of them from and against claims, damages, losses and expenses, including but limited to attorney's fees and costs, arising out of or resulting from the breach of this Agreement and/or performance of the Work, including but not limited to, such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death or to injury to or destruction of tangible property (other than the Work itself), including loss of use resulting there from, caused by negligence acts or omissions of the Trade Contractor, the Trade Contractor's sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, except to the extent such claim, damage, loss or expense is caused by the negligence of a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described herein.
>
> *     *     *
>
> 8.4.     Trade Contractor waives all rights against Construction Manager, Owner, the Indemnities and Architect and their agents, officer, directors and employees for recovery or damages to the extent that these damages are covered by any insurance required by this Agreement.

10

10321340v5

42.     The International Concrete Trade Contract Agreement contains the following insurance provision:

> 10. Insurance:
>
> The Trade Contractor shall procure and shall maintain until final acceptance of the Work or until such time as required by the Owner in the Prime Contract, such insurance as will protect the Trade Contractor, the Construction Manager, the Owner and its lenders, and their respective officers, directors, managers, agents, shareholders, members and employees, insuring against claims, damages and losses arising out of or resulting from the Work, whether performed by the Trade Contractor, or by anyone directly or indirectly employed by the Trade Contractor, or by anyone for whose acts Trade Contractor may be liable."

*     *     *

> 9.1     The Trade Contractor shall purchase and maintain insurance of the following types of coverage and limits of liability:

| | |
|---|---|
| Commercial General Liability – including Contractual Liability | $2,000,000 Each Occurrence $2,000,000 Aggregate, PER PROJECT |
| Completed Products-Completed Operations | $2,000,000 Aggregate |
| Workers' Compensation and Employers Liability | $1,000,000 Each Employee |
| Business Automobile, Including HNOA | $1,000,000 CSL per Accident |
| Umbrella Liability | $2,000,000 |

> NO EXCLUSIONS FOR CONTRACTUAL, OR WORKER INJURY ARE ACCEPTABLE
>
> **Umbrella Liability Insurance in an amount not less than $2,000,000 providing excess coverage over all limits and coverages required in paragraph above, except for subcontractors in the trades of scaffolding demolition excavation, of which at least $5,000,000 is required.**

11

The additional insured list should include:

VI.   KSK Construction Group LLC
VII.  219 JSP LLC, Tankhouse LLC, 219JSP Manager LLC, TR Investors LLC
VIII. Bank Hapoalim B.M. ("BH"), ISAOA/ATIMA
IX.   The City of New York, together with its officials and employees, New York City Dept. of Buildings
X.    40 Flatbush Realty Associates LLC

In the event that the Work includes performing remediation work, if required by Owner, Trade Contractor shall purchase and maintain Contractor's Pollution Liability insurance for environmental incidents that arise out of the Work, with limits of no less than Two Million Dollars ($2,000,000) per claim and Two Million Dollars ($2,000,000) in the aggregate, covering both first and third party claims, such policy coverage to include a three (3) year tail.

**The Owner, Indemnitees and/or Construction Manager or any other entity designated by the Owner or Construction Manager (such as the Project lender) are to be named as an additional insured on a primary noncontributory basis to the Trade Contractor's insurance policies.**

\* \* \*

9.3 Certificates of Insurance acceptable to the Construction Manager and Owner shall be filed with the Construction Manager prior to commencement of the Trade Contractor's Work. All such certificates of insurance shall, at a minimum, contain a provision that coverage afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Construction Manager. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final application for payment as required. If any information concerning reduction of coverage is not furnished by the insurer, it shall be furnished by the Trade Contractor with reasonable promptness according to the Trade Contractor's information and belief. At any time, Trade Contractor shall furnish to Construction Manager any and all endorsements and policies of insurance demanded by Construction Manager.

10321340v5

43.     The International Concrete Trade Contract Agreement obligated International Concrete to purchase commercial general liability insurance that names 219 JSP and KSK Construction Group  as additional insureds on a primary and non-contributory basis and to obtain and provide certificates of insurance that reflect the coverage and the status of  219 JSP and KSK Construction Group as additional insureds.

44.     Travelers issued Commercial General Liability Policy No. 68G-7R214655-22-42 to Best Mechanical as the Named Insured, for the coverage period December 12, 2022 to December 12, 2023 (the "Travelers Policy").

45.     A certificate of insurance was issued to Best Mechanical which identifies both  219 JSP and KSK Construction Group as additional insureds under the Travelers Policy.

46.     The Travelers Policy provides commercial general liability coverage with limits of $1,000,000 each occurrence and $2,000,000 in the general aggregate.

47.     The Travelers Policy contains the following BLANKET ADDITIONAL INSURED  endorsement which states in relevant part:

> The following is added to SECTION II - WHO IS AN INSURED:
>
> Any person or organization that you agree in a written contract to include as an additional insured on this Coverage Part is an insured, but only:
>
> a. With respect to liability for "bodily injury" or "property damage" that occurs, or for "personal injury" caused by an offense that is committed, subsequent to the signing of that contract or agreement and while that part of the contract or agreement is in effect; and
>
> b. If, and only to the extent that, such injury or damage is caused by acts or omissions of you or your subcontractor in the performance of "your work" to which the written contract or agreement applies. Such person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization.

10321340v5

48.    219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. qualify as additional insureds under the Travelers Policy.

49.    On November 1, 2023, defense counsel in the Underlying Action for 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. tendered the defense and indemnification of 219 JSP, LLC, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. for the claims asserted against them in the Underlying Action to Best Mechanical, with the request that Best Mechanical notify its insurers of the tender.

50.    By letter dated December 13, 2023, a representative of Travelers responded to the November 1, 2023 tender of 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. by denying the tender.

51.    James River issued Commercial General Liability Policy No. 00136924-01 to International Concrete (the "James River Policy").

52.    The James River Policy provides commercial general liability coverage with limits of $1,000,000 each occurrence and $2,000,000 in the general aggregate.

53.    219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. qualify as additional insureds under the James River Policy.

54.    A certificate of insurance was issued to International Concrete which identifies 219 JSP as an additional insured under the James River Policy on a primary and non-contibutory basis, as per written contract, and identifies the "Project" as "219 Jay Street."

55.    Defense counsel in the Underlying Action for 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. tendered the defense and indemnification of 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. to

14

10321340v5

International Concrete for the claims asserted against them in the Underlying Action to International Concrete, with the request that International Concrete notify its insurers of the tender.

56. James River has not responded to the tender of 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc.

57. Colony issued Umbrella Liability Policy No. EXO 4281615 to International Concrete (the "Colony Policy").

58. The Colony Policy provides excess liability coverage with limits of $2,000,000 each occurrence and $2,000,000 in the aggregate.

59. 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. qualify as additional insureds under the James River Policy.

60. A certificate of insurance was issued to International Concrete which identifies 219 JSP as an additional insured under the Colony Policy on a primary and non-contributory basis, as per written contract, and identifies the "Project" as "219 Jay Street."

61. Defense counsel in the Underlying Action for 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. tendered the defense and indemnification of 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. for the claims asserted against them in the Underlying Action to International Concrete, with the request that International Concrete notify its insurers of the tender.

62. Colony has not responded to the tender of 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc.

63. State National issued Commercial General Liability Policy No. PSI2200351 to International Concrete (the "State National River Policy").

10321340v5

64. The State National Policy provides commercial general liability coverage with limits of $2,000,000 each occurrence and $4,000,000 in the general aggregate.

65. 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. qualify as additional insureds under the State National Policy.

66. A certificate of insurance was issued to International Concrete which identifies 219 JSP and KSK Construction Group as an additional insured under the State National Policy on a primary and non-contributory basis per written contract agreement and per policy terms and conditions. The certificate of insurance further identifies the Job Location as 219-221 Jay Street Brooklyn, New York.

67. Defense counsel in the Underlying Action for 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. tendered the defense and indemnification of 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. for the claims asserted against them in the Underlying Action to International Concrete, with the request that International Concrete notify its insurers of the tender.

68. State National has not responded to the tender of 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc.

69. United Specialty issued Umbrella Liability Policy No. CVN2200184 to International Concrete (the "United Specialty Policy").

70. The United Specialty provides excess liability coverage with limits of $3,000,000 each occurrence and $3,000,000 in the aggregate.

71. 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. qualify as additional insureds under the United Specialty Policy.

10321340v5

72. A certificate of insurance was issued to International Concrete which identifies 219 JSP and KSK Construction Group as additional insureds under the United Specialty Policy on a primary and non-contributory basis per written contract agreement and per policy terms and conditions. The certificate of insurance further identifies the Job Location as 219-221 Jay Street Brooklyn, New York.

73. Defense counsel in the Underlying Action for 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. tendered the defense and indemnification of 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. for the claims asserted against them in the Underlying Action to International Concrete, with the request that International Concrete notify its insurers of the tender.

74. United Specialty has not responded to the tender of 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc.

75. As a result of Defendants' refusal to accept the tender and defend 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc., Plaintiff has been forced to provide a defense to 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. in the Underlying Action.

76. Through June 2, 2026, Plaintiff has expended $56,034.00 in defending 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. in the Underlying Action.

77. Defendants have refused to accept the tender of the defense, to reimburse Plaintiff for the amount expended in defending 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc., to agree to cover 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. on a primary and non-contributory basis, and to

17

indemnify 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. for any settlement or judgment entered against them in the Underlying Action.

**FIRST COUNT**

1. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 77 of the Complaint as if more fully set forth herein.

2. 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. are additional insureds under the Travelers Policy, the James River Policy, the Colony Policy, the State National Policy and the United Specialty Policy, for the claims alleged in the Underlying Action.

3. Defendants owe 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. a duty to defend and to indemnify on a primary and non-contributory basis, for the claims alleged against them in the Underlying Action.

4. Although duly demanded, Defendants have failed and refused to provide primary defense and indemnification to 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. for the claims alleged against them in the Underlying Action.

5. Plaintiff seeks a determination of its rights with regard to the Travelers Policy, the James River Policy, the Colony Policy, the State National Policy and the United Specialty Policy, including a declaratory judgment that Defendants were and are required to defend and indemnify 219 JSP, LLC, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. for the claims alleged against them in the Underlying Action; that such coverage applies on a primary basis and non-contributory basis; and that Defendants are obligated to reimburse Plaintiff for the costs and fees incurred by Plaintiff in defending the Underlying Action.

18

6. An actual and justiciable controversy exists between Plaintiff and Defendants regarding coverage under the Travelers Policy, the James River Policy, the Colony Policy, the State National Policy and the United Specialty Policy, to which Plaintiff has no adequate remedy at law.

## SECOND COUNT

1. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 77 and the First Count of the Complaint as if more fully set forth herein.

2. As a result of Defendants' failure to acknowledge that they owe a duty to defend 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. under the Travelers Policy, the James River Policy, the Colony Policy, the State National Policy and the United Specialty Policy, Plaintiff has incurred substantial fees and costs in the defense of the Underlying Action.

3. To date, Plaintiff has expended $56,034.00 in defense costs and fees in the Underlying Action.

4. The defense fees and costs expended by Plaintiff continue to increase as the Underlying Action continues to be litigated.

5. Although duly requested, Defendants have failed and refused to acknowledge their primary defense and coverage obligations and to reimburse Plaintiff for the fees and costs incurred in defending the Underlying Action.

6. As a result of the foregoing, Plaintiff is entitled to a money judgment against Defendants in an amount equal to what Plaintiff has incurred and will in the future incur in defense fees and costs, in an amount to be determined by the Court, plus interest.

**WHEREFORE,** Plaintiff demands judgment as follows:

10321340v5

A. On the First Count, a declaratory judgment determining the rights of Plaintiff and Defendants with respect to their liability insurance coverage obligations in the Underlying Action, including a declaratory judgment that Defendants are required to defend and indemnify 219 JSP, KSK Construction Group, KSK Construction Corp, and KSK Construction, Inc. in the Underlying Action under the Travelers Policy, the James River Policy, the Colony Policy, the State National Policy and the United Specialty Policy, and that such coverage applies on a primary and non-contributory basis before coverage under the New York Marine Policy;

B. On the Second Count, a money judgment in favor of Plaintiff and against Defendants in an amount to be determined by the Court, plus interest;

C. Granting Plaintiff attorneys' fees, costs and disbursements in this action, together with such other and further relief as this Court deems equitable and just.

Dated: New Providence, New Jersey
      June 29, 2026

           **LINDABURY, McCORMICK, ESTABROOK & COOPER, P.C**
Attorneys for Plaintiff
New York Marine and General Insurance Company
430 Mountain Avenue, Suite 300
New Providence, New Jersey 07974
(908) 233-6800

By:_____
      Jay Lavroff, Esq.

20